**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Daniel S. Guerra (State Bar No. 267559)
Joshua B. Glatt (State Bar No. 354064)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
      dguerra@bursor.com
      jglatt@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| NORA BOROWSKY, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | <u>JURY TRIAL DEMANDED</u> |
| TREE TOP, INC., | |
| Defendant. | |

Plaintiff Nora Borowsky ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Tree Top, Inc. ("Defendant").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     Plaintiff brings claims on behalf of herself and others similarly situated who purchased Defendant's Tree Top 100% Apple Juice Products (the "Products").

2.     Defendant prominently represents that the Products are made of "100% Apple Juice," "100% Juice" and/or with "100% USA Apples."  Defendant sells six substantially similar iterations of its "100% Juice" Apple Juice products.

3.     These representations together signal to reasonable consumers, like Plaintiff, that the Products are comprised of solely fruit and fruit-derived ingredients.  Instead, and unbeknownst to Plaintiff who purchased a subset of the Products relying on Defendant's representation that the Products are comprised exclusively of juice and juice products, the Products are made with synthetic, non-natural ascorbic acid; a human-made preservative.

4.     Accordingly, Plaintiff brings claims against Defendant for violations of (1) California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.; (2) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (3) Violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; and (4) Breach of Express Warranty.

## PARTIES

5.     Plaintiff Borowsky is a citizen of California and resident of Chico, California. Plaintiff purchased Defendant's Tree Top 100% Apple Juice Product with the white label from a Safeway store in April 2025 in Novato, California.  Prior to making her purchase, Plaintiff viewed and relied on Defendant's representation that the Product she purchased was comprised of "100% Apple Juice" made from "100% USA Apples" and so reasonably understood that it was comprised solely of apples and apple products.  Plaintiff saw these representations and warranties prior to and at the time of her purchase.  Thus, Plaintiff reasonably relied on Defendant's representations when

she decided to purchase the Product.  Accordingly, these representations and warranties were part of the basis of the bargain in that Plaintiff would not have purchased her Product on the same terms had she known that these representations and warranties were untrue.  In making her purchase, Plaintiff paid a price-premium due to Defendant's false and misleading claims regarding the Product's purported fruit juice content.  Plaintiff, however, did not receive the benefit of the bargain because the Product did not, in fact, contain exclusively 100% apple juice because it contained ascorbic acid, a synthetic preservative.  Had Plaintiff known that Defendant's representations and warranties about the Product were false and misleading, Plaintiff would not have purchased the Product or would have paid substantially less for it.

6.    Plaintiff remains interested in purchasing the Products from Defendant in the future. However, unless and until she can determine if the Product is accurately labeled and properly discloses the presence of any preservatives in the Product, Plaintiff will be unable to rely on the truth of Defendant's labeling.  So long as the Product is labeled as being comprised of 100% juice—when it contains non-juice, synthetic ingredients—Plaintiff will be unable to make informed decisions about whether to purchase the Product in the future and will be unable to evaluate the different prices between Defendant's Product and competitors' products.  Plaintiff will likewise be unable to rely on Defendant's marketing and representations going forward.  Moreover, she is likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its marketing is accurate, non-misleading, and that its Product actually conforms to Defendant's representation that the Product is comprised of only 100% juice.

7.    Defendant Tree Top, Inc. is a Washington company with its principal place of business in Selah, Washington.  Defendant manufacturers, markets, and sells its juice Products through California and the United States.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(a) because this is a class action where the aggregate claims of all members of the proposed Classes are in excess of $5,000,000.00 exclusive of interest and costs and at least one member of the proposed Classes is a citizen of state different from Defendant.

9.      This Court has personal jurisdiction over Defendant because Defendant purposefully avails itself to the benefits of this forum by selling its Products to consumers, including Plaintiff, in this forum.  Defendant derives substantial revenue from the sale of its Products in this State, with knowledge that its Products are being marketed and sold for use in this State.

10.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims took place within this District.

<u>FACTUAL ALLEGATIONS</u>

**I.      DEFENDANT'S "100% APPLE JUICE" PRODUCTS**

11.     Defendant sells its Products in several packaging iterations, each with make the same false and misleading "100% Apple Juice" or "100% Juice" representations despite containing ascorbic acid.

12.     Defendant manufactures, markets and sells its apple juice products as being made with 100% Apple Juice.  The version that Plaintiff purchased (reproduced below) additionally adds that it is made with "100% USA Apples."



13.     The Products are sold online and in brick-and-mortar stories throughout California and the United States.  The version Plaintiff purchased is substantially similar to Defendant's line of "100% Apple Juice"-branded Products.

14.     Contrary to Defendant's express representation on the front label that the Products are entirely comprised of exclusively apple juice and apple juice concentrate, the ingredient panel on the side discloses, in small print, that the Products contain ascorbic acid, a synthetic, non-apple ingredient.

15.     For example, under its "100% Juice" tab on its website, Defendant lists it as a "100% Juice" apple juice product[1]:



16.     Lower on the page, Defendant doubles down on the wholly-apple juice representations:



<hr />

[1] Tree Top, *100% Apple Juice*, available https://treetop.com/products/100-percent-apple-juice/.

17.    But, buried under the "Ingredients" tab (which is preset to require a consumer click the "+" tab to expand), Defendant discloses that the Product is made with ascorbic acid.



18.    Each of Defendant's "100% Apple Juice" and "100% Juice" products are sold with substantially similar false and misleading marketing.  This includes Defendant's Tree Top 100% Juice 64 oz bottle, Tree Top 100% Juice 46 oz Bottle, Tree Trop 100% Juice 128 oz Bottle, Tree Top 100% Juice 128 oz Bottles (multi-pack), Tree Top 100% Juice 200mL Juice Boxes, and Tree Top 100% Juice 10 oz Bottles.

19.    Indeed, Defendant sells several other "100% Apple Juice" branded versions of its products that are comprised of only apple ingredients and free of ascorbic acid.  For example, Defendant's Tree Top 3 Apple Blend states that it is made with "100% Apple Juice:"



20.     But unlike Defendant's Products at issue in this Complaint, the 3 Apple Blend version lists "Apple Juice" as its sole ingredient:[2]

**Ingredients**                                                                      —

Apple Juice

21.     The same is true for Defendant's Tree Top Organic Apple 100% Juice-branded bottle[3]. Despite having nearly identical packaging to the Products at issue here, that product is comprised of only apple and apple byproduct; it is devoid of ascorbic acid: a synthetic, non-apple, human made preservative.



---

[2] Tree Top, *3 Apple Blend Juice*, available https://treetop.com/products/100-percent-pure-pressed-3-apple-blend-juice/.

[3] Tree Top, *100% Organic Apple Juice*, available https://treetop.com/products/100-percent-organic-apple-juice-bottle/.

22.    Any reasonable consumer would expect a product branded as containing 100% of a specific ingredient to contain only "Organic Apple Juice from Concentrate (Water; Concentrated Organic Apple Juice)."[4]

23.    This shows that Defendant could have easily removed the ascorbic acid it adds to the Products at issue here.  This also shows that Defendant was aware of the addition of ascorbic acid but nonetheless chose to represent to reasonable consumers that the Products were comprised of only apple and apple byproduct despite knowing that ascorbic acid was added and present.

## II.    DEFENDANT'S PRODUCTS ARE MISLABELED DUE TO THE INCLUSION OF ASCORBIC ACID

24.    "Ascorbic acid is a human-made isolate used in myriad processed supplements that was created to cost-effectively mimic and replace naturally occurring vitamin C found in natural food.  It's often derived from GMO corn starch, GMO corn sugar or rice starch."[5]  For that reason, ascorbic acid is referred to as "synthetic vitamin C."[6]  Although ascorbic acid can be naturally occurring and mimics vitamin C's chemical structure, its "reactive nature makes isolation of the substance from natural sources challenging, which has resulted in all commercial ascorbic acid being synthetically produced."[7]  Apart from being a source of artificial vitamin C, Ascorbic acid concurrently works as a preservative that helps prevent microbial growth and oxidation in food products.[8]

25.    Accordingly, the U. S. Food and Drug Administration ("U.S. F.D.A.") considers ascorbic acid as a food additive.[9]

---

[4] *Id.*

[5] Smidge Blog, *Why Real Food Vitamin C is better Than Ascorbic Acid – And How To Tell The Difference*, (June 1, 2021), *available* https://www.getsmidge.com/blogs/news/vitamin-c-versus-ascorbic-acid.

[6] Mount Sinai, *Vitamin C (Ascorbic Acid)*, available https://www.mountsinai.org/health-library/supplement/vitamin-c-ascorbic-acid.

[7] National Organic Program, *Ascorbic Acid – Technical Evaluation Report*, U.S. DEP'T OF AGRICULTURE (July 17, 2019) *available* https://www.ams.usda.gov/sites/default/files/media/AscorbicAcidTRFinal7172019.pdf.

[8] ChemicalSafetyFacts.org, *Ascorbic Acid*

[9] U.S. Food & Drug Admin., *Food Additive Status List*, *available* https://www.fda.gov/food/food-additives-petitions/food-additive-status-list.

---

26.     In fact, just like Defendant's misbranded Products here, in 2015, the U.S. F.D.A. informed fruit product producer Chiquita Bananas that its Pineapple Bites and Pineapple Bites with Coconut products were "misbranded within the meaning of section 403(k) of [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail[ed] to declare these preservatives with a description of their functions."[10]  Indeed, it is required that "[a] food to which a chemical preservative(s) is added shall … bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., 'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or to 'promote color retention'."  21 C.F.R. § 101.22(j).  As such, "[i]f the beverage contains 100 percent juice and also contains non-juice ingredients that do not result in a diminution of the juice soluble solids … when the 100 percent juice declaration appears on a panel of the label that does not also bear the ingredient statement, it must be accompanied by the phrase 'with added _____,' the blank filled in with a term such as 'ingredient(s),' 'preservative,' or 'sweetener,' as appropriate[.]"  21 C.F.R. § 101.30(b)(1)(3).  Despite the requirement, Defendant fails to identify the ascorbic acid as a preservative or ingredient.

III.    CONSUMERS' REAL JUICE PREFERENCES

27.     "Every time you add a bottle of '100% fruit juice' to your cart, you probably thought several fruits had to be squeezed and pressed for its juice to be extracted.  After all, that's what the wording suggest."[11]  To that end, "[c]lean label claims resonate for purchasers of … juices and include natural, no artificial flavors, and no artificial colors."[12]  In fact, at least one survey found that "Americans are paying more attention to ingredient lists, choosing clean ingredients and avoiding chemical sounding ingredients" while "[a]bout half of Americans say they seek out natural flavors at least some of the time [and] artificial flavors, colors, sweeteners and

---

[10] David Bellm, *Food Packaging: FDA Says Chiquita Labels Are Misleading*, Packing Digest (Mar. 11, 2015) *available* https://www.packagingdigest.com/trends-issues/food-packaging-fda-says-chiquita-labels-are-misleading.

[11] Zakiyah Ebrhim, *Why the '100% Fruit Juice' Label Is A Lie*, NEWS24 (Sept. 2, 2022) *available* https://www.news24.com/life/wellness/diet/why-the-100-fruit-juice-label-is-a-lie-20220902-2.

[12] Innova Market Insights, *Food Trends: US Consumer Preferences* (May 14, 2024) *available* https://www.innovamarketinsights.com/trends/food-trends/.

preservatives were sought out by only about one in 10 consumers, with approximately half saying they avoid each of them at least some of the time."[13]

28.     In fact, recent consumer research shows that "[f]ruit juices are often marketed as healthy options, but misleading fruit juice claims can confuse consumers.  Terms like '100% fruit juice,' … can sometimes be used to make the products appear healthier than they actually are."[14] Indeed, the term 100% Juice "suggests that the product is made entirely from the juice of fruits, with no added sugars, preservatives, or artificial ingredients."[15]

29.     Knowing this, producers, like Defendant, aim to capitalize on market preferences by labeling its Products as containing "100% Apple Juice" made from "100% USA Apples." Unfortunately for consumers, Defendant's marketing and labeling practices are precisely what consumers are seeking to avoid: pure juice representations made clearly and conspicuously on the front labels while inconspicuously disclosing contradictory ingredient information on the ingredient panel of the packaging.

30.     Although Defendant is best situated to know the true composition of its Products, to the extent necessary, Plaintiff has satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

(a)     **WHO:** Defendant Tree Top, Inc.

(b)     **WHAT:** Defendant's conduct here was, and continues to be, fraudulent because it omitted and concealed that the Products contain ascorbic acid, a synthetic non-apple juice ingredient or derivative despite affirmatively representing that the Products are comprised wholly of apple juice.  These false and misleading representations were material to Plaintiff and the Classes because they would not have paid the same amount for the Products or would not have

---

[13] Food Insight, *IFIC Survey: From "Chemical-sounding" to "Clean": Consumer Perspectives on Food Ingredients* (June 17, 2021) *available* https://foodinsight.org/ific-survey-from-chemical-sounding-to-clean-consumer-perspectives-on-food-ingredients/.

[14] Rashi Chaudhary, *Consumer Awareness: What You Need To Know About Fruit Juice Claims*, OMJOOS (Sept. 17, 2024) *available* https://www.omjoos.com/news-and-blog/2024/09/17/consumer-awareness-what-you-need-to-know-about-fruit-juice-claims/?srsltid=AfmBOooEq9DDWAPA0Q_i14WvIM-0NNwcbRdc_lzd4jI_J0VKUtzxQ2hp.

[15] *Id.*

purchased the Products at all had they known the Products contained synthetic, non-apple ingredients and so was not comprised of 100% apple juice and apple byproducts. Defendant knew or should have known that this information is material to reasonable consumers, including Plaintiff and Class Members, in making their purchasing decisions, given its expertise and offering of products, as described above, yet it continued to pervasively market the Products in this manner in California and the United States.

(c)    **WHEN:** Defendant made material misrepresentations and omissions to Plaintiff and the members of the Classes during the putative class period, including prior to and at the time of purchase, despite its knowledge that the Products did not, in fact, contain exclusively 100% apple and apple byproducts. Plaintiff and Class Members viewed the packaging of the Product when purchasing and viewed the representations and warranties made by Defendant and understood them to mean that the Product did not contain any ingredients other than apple and apple byproduct.

(d)    **WHERE:** Defendant's made material misrepresentations and omissions on the Products' labels and packaging and marketing materials.

(e)    **HOW:** Defendant made material misrepresentations and omissions of fact regarding the Products by representing and warranting that the Products were comprised of 100% apple and apple byproduct. Defendant, on its labeling, omitted material disclosures to consumers about the true contents of the Products.

(f)    **INJURY:** Plaintiff and members of the Classes purchased, and paid a premium (up to the full purchase price), or otherwise paid more for the Products than they would have, or alternative they would not have purchased the Products at all, absent Defendant's misrepresentations and omissions.

## CLASS ALLEGATIONS

31.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Federal Rules of Civil Procedure 23, defined as:

*Nationwide Class*:  All persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products primarily for consumption (the "Nationwide Class").

*California Subclass:*  All persons in California who, during the maximum period of time permitted by the law, purchased Defendant's Products primarily for consumption (the "California Subclass", together with the Nationwide Class, "the Classes").

32.    The Classes do not include (1) Defendant, its officers, and/or directors; (2) the Judge and/or Magistrate to whom this case is assigned; (3) the Judge or Magistrate's staff and family; and (4) Plaintiff's counsel and Defendant's counsel.

33.    Plaintiff reserves the right to amend the above class definitions and add additional classes and subclasses as appropriate based on investigation, discovery, and the specific theories of liability.

34.    ***Community of Interest:***  There is a well-defined community of interest among Members of the Classes, and the disposition of the claims of these Members of the Classes in a single action will provide substantial benefits to all parties and to the Court.

35.    ***Numerosity***:  While the exact number of members of the Classes is unknown to Plaintiff at this time, and can only be determined by appropriate discovery, upon information and belief, members of the Classes number in the millions.  Members of the Classes may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

36.    ***Existence and Predominance of Common Questions of Law and Fact***:  Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individuals of the Classes.  These common legal and factual questions include, but are not limited to:

(a)    Whether Defendant's Products were comprised exclusively of 100% apple juice;

(b)    Whether Defendant's Products contained synthetic additives contrary to a reasonable consumer's understanding of Defendant's label claims;

(c)    Whether reasonable consumers would understand Defendant's representations and warranties concerning its juice content were untrue and misleading;

(d)    Whether Defendant's representations and warranties were material;

(e)    Whether Defendant was unjustly enriched as a result of its unlawful conduct as alleged in this Complaint;

(f)    Whether Defendant violated California's Consumers Legal Remedies Act, ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.;

(g)    Whether Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.;* and,

(h)    Whether Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

37.    ***Typicality:***  The claims of the named Plaintiff are typical of the claims of other members of the Classes in that the named Plaintiff was exposed to Defendant's false and misleading advertising about the fruit juice composition of its Products, purchased the misleadingly labeled Products in reliance on those representations and warranties, and suffered a loss as a result of those purchases.

38.    ***Adequacy:***  Plaintiff will fairly and adequately represent and protect the interests of the Classes as required by Fed. R. Civ. P. 23(a)(4).  Plaintiff is an adequate representative of the Classes because she has no interests adverse to the interest of the Members of the Classes.  Plaintiff is committed to the vigorous prosecution of this action, and, to that end, has retained skilled and experienced counsel.

39.    ***Superiority:***  A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action because the expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek redress of their claims other than through the procedure of a class action.  In addition, even if Class Members could afford individual litigation, the court system could not.  It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments, and

would magnify the delay and expense to all parties and to the court system, resulting in multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each Member of the Classes. Plaintiff anticipates no difficulty in the management of this action as a class action. Class-wide relief is essential to compel compliance with California's consumer protection laws. If separate actions were brought by individual members of the Classes, Defendant could be subject to inconsistent obligations.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumer's Legal Remedies Act ("CLRA"),
Cal. Civ. Code § 1750, *et seq.*
(On Behalf of Plaintiff and the California Subclass)**

40.     Plaintiff incorporates by reference each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

41.     Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

42.     Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

43.     Civil Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

44.     Civil Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

45.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers by advertising that the Products contained exclusively 100% apple juice even though it contains synthetic preservatives.

46.     Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

47.     On April 29, 2025, prior to filing this action, Plaintiff sent a pre-suit notice letter pursuant to CLRA § 1782.  The letter was sent certified mail, return receipt requested, and provided notice of Defendant's violation of the CLRA and demands that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged herein.  Defendant failed to remedy the issues raised in the letter.

48.     Plaintiff and the California Subclass seek (1) actual and punitive damages, (2) restitution, (3) reasonable costs and attorneys' fees, and (4) to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

**COUNT II**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On behalf of the Plaintiff and the California Subclass)**

49.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

50.     Plaintiff brings this claim individually and on behalf of the Members of the California Subclass against Defendant.

51.     Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

52.     Plaintiff has standing to pursue this claim because she suffered an injury-in-fact and lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct.  Specifically, Plaintiff purchased the Product for her personal use.  In so doing, Plaintiff relied upon Defendant's false representations that the Product was comprised of exclusively "100% Apple Juice" when the Product actually contained synthetic preservatives.  Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

53.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200.  A business act or practice is "unlawful" if it violates any established state or federal law.  A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers.  The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL.  Cal. Bus. & Prof. Code § 17204.  Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

54.     Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq*.

55.     Defendant violated the UCL's proscription against engaging in **Unlawful Business Practices** through its violations of the FAL, Cal. Bus. & Prof. Code § 17500, *et seq.* and CLRA, Cal. Civ. Code § 1770(a)(5) and (a)(7) as alleged above.  Defendant also violated the UCL's unlawful prong because the Products are misbranded pursuant to federal regulations.

56.     Defendant has also violated the UCL's proscription against engaging in **Unfair Business Practices**.  Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code § 17200, *et seq.* in that Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  Defendant's deceptive "100% Apple Juice" representations have misled consumers into purchasing the Products over other truthfully labeled competitors.

57.     Plaintiff and the California Subclass suffered substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and omissions about the inclusion of ascorbic acid, a synthetic preservative.

58.    There is no benefit to consumers or competition from deceptively marketing that the Products are comprised of 100% apple juice when it is not.

59.    The gravity of the consequences of Defendant's conduct as described above outweigh any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace.  Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the California Subclass.

60.    Plaintiff and the California Subclass could not have reasonably avoided their injury or known that the Products' prominent, front-label marketing was in fact inaccurate and contradicted by Defendant's back-label, fine-print disclosures.  As such, they could not have reasonably avoided the injury they suffered.

61.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to (a) provide restitution to Plaintiff and the other members of the Subclass; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's attorneys' fees and costs.

<u>COUNT III</u>
**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the California Subclass)**

62.    Plaintiff hereby incorporates the foregoing allegations as if fully set forth herein.

63.    Plaintiff brings this claim individually and on behalf of the California Subclass against Defendant.

64.    Defendant's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Plaintiff, members of the California Subclass, and the public.  As described throughout this Complaint, Defendant misrepresents that the Products are comprised of 100% apple juice and thus free of synthetic additives when it contains ascorbic acid, a synthetic additive.

65.    By Defendant's actions, it has disseminated uniform advertising regarding the Products across California and the U.S.  The advertising was, by its very nature, unfair, deceptive,

1   untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq.*  Such

2   advertisements were intended to and likely did deceive the consuming public.

3          66.    The above-described false, misleading, and deceptive advertising Defendant

4   disseminated continues to have a likelihood to deceive in that Defendant affirmatively represented

5   that the Products are comprised of 100% apple juice when it contains ascorbic acid, a synthetic,

6   non-juice preservative.

7          67.    In making and disseminating these statements, Defendant knew, or should have

8   known, that its advertising was untrue and misleading in violation of California law.  Plaintiff and

9   the members of the California Subclass based their purchasing decisions on Defendant's material

10  false and misleading representations and warranties about the composition of its Products.  Plaintiff

11  and the California Subclass were injured in fact and lost money and property as a result, in an

12  amount to be proven at trial.

13         68.    The misrepresentations by Defendant of the material facts described and detailed

14  above herein constitute false and misleading advertising and, therefore, constitute a violation of

15  Cal. Bus. & Prof. Code § 17500, *et seq.*

16         69.    Accordingly, Plaintiff and the California Subclass seek all monetary and non-

17  monetary relief allowed by law, including (a) restitution of all profits stemming from Defendant's

18  unfair, unlawful, and fraudulent business practices; (b) declaratory relief; (c) reasonable attorneys'

19  fees and costs under Cal. Code Civ. Proc. §1021.5; and (d) injunctive relief, and other appropriate

20  equitable relief.

**COUNT IV**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Nationwide Class)**

23         70.    Plaintiff hereby incorporates the foregoing paragraphs as if fully stated herein.

24         71.    Plaintiff brings this claim individually and on behalf of the Nationwide Class

25  against Defendant.

26         72.    Plaintiff brings this claim under the laws of the State of California.

27         73.    Plaintiff and the Nationwide Class Members formed a contract with Defendant at

28  the time Plaintiff and the Nationwide Class Members purchased the Products.

74.     The terms of the contract include the promises and affirmations of fact made by Defendant on the Products' packaging that it was comprised of 100% apple juice.

75.     This labeling and advertising constitute express warranties and became part of the basis of the bargain and part of the standardized contract between Plaintiff and the Nationwide Class and Defendant.

76.     As set forth above, Defendant purports through its labeling, marketing, and packaging, to create an express warranty that the Products are comprised of 100% apple juice, implying to consumers that the Products are therefore free of synthetic, non-juice preservatives. However, Defendant breached its express warranties about the Products by including ascorbic acid, an artificial, synthetic additive, thereby rendering the prominent "100% Apple Juice" representation false and misleading.  Simply, the Products do not conform to Defendant's representations and warranties.

77.     Plaintiff and the Nationwide Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Products.

78.     Plaintiff and the members of the Nationwide Class would not have purchased the Products had they known the true nature of the them.

79.     As a result of Defendant's breach of express warranty, Plaintiff and each member of the Nationwide Class suffered financial damage and injury as a result and are entitled to damages, in addition to costs, interest and fees, and attorneys' fees, as allowed by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

a)      For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Classes, and Plaintiff's Counsel as Class Counsel;

b)      For an order declaring that Defendant's conduct violates each of the statutes referenced herein;

c)      For an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

d)    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e)    For prejudgment interest on all amounts awarded;

f)    For an order of restitution and all other forms of equitable monetary relief;

g)    For injunctive relief as pleaded or as the Court may deem proper;

h)    For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.


Dated:  July 1, 2025                          **BURSOR & FISHER, P.A**.

                                              By:  ___/s/ *L. Timothy Fisher*_____
                                                        L. Timothy Fisher

                                              L. Timothy Fisher (State Bar No. 191626)
                                              Daniel S. Guerra (State Bar No. 267559)
                                              Joshua B. Glatt (State Bar No. 354064)
                                              1990 North California Blvd., 9th Floor
                                              Walnut Creek, CA 94596
                                              Telephone: (925) 300-4455
                                              Facsimile: (925) 407-2700
                                              E-mail: ltfisher@bursor.com
                                                         dguerra@bursor.com
                                                         jglatt@bursor.com

                                              *Attorneys for Plaintiff*

1

**<ins>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</ins>**

2    I, L. Timothy Fisher, declare as follows:

3        1.        I am an attorney at law licensed to practice in the State of California and a member

4    of the bar of this Court.  I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff

5    who currently resides in Chico, California.  I have personal knowledge of the facts set forth in this

6    declaration and, if called as a witness, I could and would competently testify thereto under oath.

7        2.        The Complaint filed in this action is filed in the proper place for trial under Civil

8    Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred

9    in the Northern District of California.  Additionally, Defendant transacts substantial business in

10    this District, including sales of the Products at issue, and Defendant advertised and marketed the

11    Product at issue to Plaintiff who then purchased the Product in this District.

12        I declare under the penalty of perjury under the laws of the State of California and the

13    United States that the foregoing is true and correct and that this declaration was executed at

14    Walnut Creek, California this 26 day of June, 2025.

15

16                                                                */s/ L. Timothy Fisher*
                                                                L. Timothy Fisher

17

18

19

20

21

22

23

24

25

26

27

28